IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 06-03093-01-CR-S-RED |
| MARVIN PERRYMAN, ) | |
| ) | |
| Defendant. ) | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant has filed a Motion to Reopen Defendant's Motion to Suppress to Conduct a Franks hearing. The government has responded to that motion, to which defendant has replied.

It is defendant's position that the Court should hold a Franks hearing because the statement by Officer Andela that he tested a stem located in the trash at defendant's residence with the NARTEC field test, which positively identified the stem as marijuana, was not a true statement. Defendant contends that he consulted with an independent drug expert, Gene Gietzen, forensic scientist and owner of Forensic Consulting, former Director of the Springfield Regional Crime Lab, and an expert witness in both state and federal court regarding drug analysis and marijuana identification. It is defendant's contention that Mr. Gietzen believes that, based on his training and vast experience in identification of marijuana, stems do not contain the active ingredients of marijuana. Therefore, defendant asserts that Officer Andela's statements are untrue regarding identifying the stem as marijuana by a chemical field test. He asserts that

1

the misstatements by the affiant mandate a redaction of the reference to the identification of the marijuana stem, pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Additionally, he contends that the affiant's misstatements of such material facts make the application of the good faith exception in U.S. v. Leon, 468 U.S. 897, 922 (1984), completely inapplicable. Defendant contends that redaction of the statements relating to the identification of marijuana stems in the trash clearly shows a lack of probable cause to believe marijuana had been at defendant's residence on the date the search warrant was issued. Further, without the identification allegations, he contends that the affidavit was so lacking in indicia of probable cause that the Leon good faith exception should not apply.

The government contends that the NARTEC Field Testing Kit is fully capable of detecting the presence of cannaboids in a sample of marijuana stems. In support of this assertion, it attached a videotaped demonstration and an affidavit from Officer Andela. The government asserts that it consulted with members of the law enforcement community, as well as a representative of the company that manufactures the test kit in question, and it is clear that, not only do marijuana stems contain cannaboids, but the NARTEC field test is readily capable of detecting their presence in the stems. At the direction of the United States Attorney's Office, members of the Springfield Police Department Narcotics Enforcement Team conducted a videotaped field test of a marijuana stem, which was represented to be like the one conducted upon the marijuana stems recovered from defendant's trash. It yielded a positive test for marijuana, which the government contends "categorically disproves the defendant's claim of police misconduct in this case." [Government's Response, at 2].

According to the affidavit of Mr. Gietzen, who reviewed Officer Andela's affidavit and the videotape of the NARTEC field test, he was asked to give his expert opinion with regard to the ability to field test alleged marijuana stems for THC and thus identify the stem as a marijuana stem. In particular, he states that he was asked to relate such an opinion based on the use of the NARTEC Field Testing Kit. Mr. Gietzen states that "I first note the Nartec used in this case is a presumptive test which cannot identify a particular substance, most notably THC (Tetrahyrdracannabinol), an active drug found in marijuana." [Affidavit of Gietzen, at 2]. According to Mr. Gietzen, he reviewed the video demonstration, and found the following problems in the manner in which the demonstrative test was conducted: There was a strong potential for contamination of the stem with the cannabinoid resins from the bud because the same pair of gloves was used to remove the bud from the bag and handle the stem; there was no side-by-side comparison of the test conducted on the stem with a known marijuana standard to demonstrate consistency in color, intensity and color formation time; the purple color formation was very slow and weak and could be a false positive due to the potential contamination; and Detective Burnett's comment that the purple color did not change with the addition of the chloroform suggests a misunderstanding of both the test and the results. It was Mr. Gietzen's opinion that, based upon his own experience, the video "revealed a strong contamination issue which was supported by the weak color formation over a long period of time." [Affidavit, at 3]. He concluded that, based on the NARTEC test or the specific use of the test in the video, there was nothing "that would validate the thought than [sic] an examination of the stem would produce results from which a stem could be identified as Marijuana. This test and my education,

3

training, experience and research do not suggest that testing a stem would allow for any positive identification of such as a Marijuana stem." [Id.].

Officer Andela states, in his affidavit, that in connection with the investigation of defendant for alleged illegal narcotics activity, he removed two bags of trash from a garbage receptacle in front of defendant's residence. During the subsequent search, he located what he believed to be marijuana stems and seeds in the bottom of a cup. He subjected a sample of stem material to a NARTEC Field Testing Kit, and the test indicated that the stem material was positive for the presence of marijuana. Officer Andela stated that he "and other members of the Springfield Police Department have tested suspected marijuana stems both before and after this particular investigation with the same field test and had the same result. That is, I have personally witnessed other samples of stem material test positive for marijuana on several other occasions and have been told by other law enforcement officers that they have experienced similar results." [Affidavit of Andela, at 1]. He then explained that a field test of marijuana stems using the NARTEC Field Testing Kit was videotaped on January 5, 2007, at the request of the United States Attorney's Office, and that the tested material yielded a positive response for the presence of marijuana.

An affidavit in support of a search warrant may be challenged under Franks if it contains deliberate or reckless misrepresentations or omissions. See United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995); United States v. Jacobs, 986 F.2d 1231, 1234 (8th Cir. 1993). To prevail on a Franks challenge, a defendant must establish that: (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "with the affidavit's false material set to one side, the affidavit's remaining

4

content is insufficient to establish probable cause." United States v. Searcy, 181 F.3d 975, 980 (8th Cir. 1999), quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1977).

To determine whether statements were made with a "reckless disregard for the truth," the Eighth Circuit has applied the standard used in First Amendment cases. United States v. Johnson, 78 F.3d 1256, 1262 (8th Cir. 1996). That standard has been described as, "whether the affiant 'in fact entertained serious doubts as to the truth of the affidavits or had obvious reasons to the doubt the accuracy of the information contained there.'" Johnson, quoting United States v. Clapp, 46 F.3d 795, 801 (8th Cir. 1995). The law is clear that minor errors or negligence, which do not reflect deliberate falsehoods, are insufficient to mandate suppression under Franks. Searcy, 181 F.3d at 980.

Defendant contends that Officer Andela lied when he stated that the stem tested positive for marijuana because a NARTEC Field Testing Kit cannot positively identify a stem as being a marijuana stem. He requests a Franks hearing, asserts that the statement should be redacted, and contends that without it, there is a clear lack of probable cause to believe marijuana had been at defendant's residence on the date the search warrant was issued. Further, without the identification allegations, he contends that the affidavit was so lacking in indicia of probable cause that the Leon good faith exception should not apply.

Regarding whether the NARTEC Field Test can positively identify a stem as being a marijuana stem, that matter appears to be in some dispute. One expert indicates that it can, and another says it cannot. Both opinions are based on training and experience in the field. It should be noted that Mr. Gietzen takes particular exception with the manner in which the demonstrative test was conducted, and is specifically concerned with the issue of contamination

5

because the same gloves were used to remove a bud and stem from the bag. The Court would point out that there apparently was not a bud in the actual field test in the instant case, which would probably have negated the concern underlying the motion to reopen, and which also means that contamination was most likely not an issue in the actual field test. It is also important to consider that the government states that it consulted with members of the law enforcement community and contacted a representative of the company that manufactures the test kit in question, and that not only do marijuana stems contain cannaboids, but the NARTEC Field Test is capable of detecting their presence in the stems.

In any event, having reviewed all the evidence presented in support of and in response to defendant's Motion to Reopen, this Court has no difficulty concluding that defendant has failed to establish that there were any deliberately false and misleading statements with a reckless disregard for the truth made by Officer Andela that would necessitate a <u>Franks</u> hearing. It is obvious that Officer Andela, through his training and experience, and through experience shared by other law enforcement officers, is of the opinion that the NARTEC kit can test a stem for the presence of marijuana. He has provided his sworn statement and a demonstrative videotape to support this opinion. Mr. Gietzen does not believe the kit can test for the presence of marijuana in a stem, and believes the demonstrative test was not conducted properly. Whether that latter belief has any relevance to the matter at hand is questionable.

The Court finds, after careful consideration, that the fact that there might be a difference of opinion among some experts about the capacity of the field test to detect marijuana in a stem does not mean that Officer Andela made any false statement knowingly and intentionally, or with reckless disregard for the truth regarding the result of the field test in this case. In context,

6

the affidavit also included the information from Officer Andela that he recovered, from defendant's trash, "numerous marijuana stems and seeds, and a pack of Zig Zag smoking papers in the bottom of a plastic cup." [Affidavit in support of Search Warrant, at 2]. A common sense reading of this statement would be that the stems and seeds found with rolling papers were from a marijuana plant. The fact that Officer Andela reached this logical conclusion cannot possibly rise to the level of a deliberately false and reckless statement. The fact that he relied on what he believed to be a valid test and valid test result can clearly not be construed as an intentionally false statement. Additionally, the other information available to Officer Andela and included in the affidavit on the specific issue of marijuana is the fact of finding suspicious stems and seeds with smoking papers in a place where a narcotics investigation was being conducted, and in a place where marijuana had previously been found during the execution of a search warrant, which resulted in a misdemeanor marijuana charge being filed against defendant.

The Court is willing, however, to set aside the information in the affidavit, which states that the stem tested positive for marijuana, because even if it is not a deliberately false statement under Franks, it may not be irrefutably, scientifically provable. The Court finds that, based on the totality of the circumstances, with the result of the test redacted, the affidavit's remaining content is nevertheless sufficient to establish probable cause for the issuance of the search warrant, for the reasons previously stated in the Report and Recommendation.

Additionally, even if it were assumed that the redaction of the statement that the stem tested positive would result in a finding that the warrant was not based on probable cause and was defective, the Court finds that the good faith exception enunciated in United States v. Leon, 468 U.S. 897, 922-23 (1984), would still apply. It is clear that Officer Andela relied in good

faith on what he believed to be a valid search warrant, even if he relied on the mistaken belief that the NARTEC Field Testing Kit could positively identify marijuana from a stem. There is nothing to suggest that the affidavit was so lacking in indicia of probable cause that the Leon good faith exception should not apply. It was objectively reasonable for the officer to have believed that probable cause existed in this case.

Based on a full review of the record, the Court finds that it must be recommended that defendant's Motion to Reopen to Conduct a Franks hearing be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 22 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Reopen be denied.

                                                              /s/ James C. England
                                                            JAMES C. ENGLAND, CHIEF
                                                            United States Magistrate Judge

Date: 02/15/07